*1022 On Application for Rehearing.
On the application for á rehearing in this ease our attention is called to the fact that we have not considered as applicable to the case the authority referred to by opponents in case of Phillips vs. Creditors, 36 An. 904, and have omitted to notice in the opinion the “main ground ” upon which was based the appeal.
1. The case of Phillips vs. Creditors has no bearing on the facts in this case. The only statement of assets in that case was “ Merchandise, as per ledger and open accounts, horses, etc., $10,320.” In the case referred to we said such a schedule was equivalent 'to no schedule at all. The schedule in this case presents no such defects. The horses, mules, etc., are identified with the plantation to which they are attached and are valued.
2. In opponent’s brief it is stated in reference to the “ main ground” on which the application for a rehearing was the basis of the appeal, “Your honors will understand that while opponents did' not base their opposition on this specific ground, yet testimony quoted below was received without objection, and will of course be considered by the court.” In the application for a rehearing it is also stated, “ it is true that the above testimony is not directly responsive to any allegation in our opposition, but it was received without objection, and of course will be considered by the coart.” Not having been specifically alleged in the opposition, and the evidence not being responsive to any allegation made by opponents, we were of the opinion that this part of the opposition, urged only in the brief and in argument, was not seriously insisted upon by opponents from the following extract from their brief: “To take advange of this act [the failure of the deputy sheriff on the persuasion of plaintiff to seize ten bales of cotton on the plantation, which was afterward turned over to L. D. McLain, who had a privilege on it] of1 indulgence of the sheriff and remove the cotton to avoid its seizure was an act of extreme bad faith in plaintiff; but opponents have not held her individually responsible for the ungracious act.” The omission was not from inadvertence, as we had fully examined the record and the brief of opponents, and inferred from the facts and the brief that this point was not seriously pressed, but that the plaintiff was relieved from responsibility individually and the blame attached to her brother, and this explanatory para *1023 graph was introduced in order to excuse her and criticise him. Opponents say in their brief: “The plaintiff had for quite a number of years been conducting business as a public merchant and there had beén nothing in her career to indicate that she was familiar with any of the various shifts and devices often resorted to by insolvent debtors to place their property beyond the reach of creditors, or to give an unfair preference to some of them. It was left for her 4 financial manager ’ to invoke and to put in operation through the machinery of the courts an equitable remedy, intended for the relief of the embarrassed but honest and solvent debtor,” etc.
Referring to the facts in the record, it appears that L. D. McLean had furnished the money and supplies that raised this cotton. This is not contradicted. He had a pledge and privilege upon it. The opponents do not assert any privilege upon it. They are ordinary creditors.
The proceeds of the sale of this cotton could not be ratably, as contended by opponents, applied to the payment of all the debts. By granting the respite the creditors do. not relinquish the privilege and pledge they may have on particular property. Mrs. Bennett, at any time after the respite was granted could — in fact, she was bound, under her agreement to do so — turn the cotton or its proceeds over to the furnisher of supplies. He had a right to the proceeds of the sale sufficient to pay his privileged debt. The surplus only could he ratably applied to the payment of the other creditors.
Opponents were in no way injured by this disposition of the cotton. The evidence does not satisfy us that there was a surplus after paying the privileged debt. No complaint is made of the amount for which the cotton was sold.
McLain’s debt for supplies furnished on the crops raised and gathered amounted to $3000, and for the current year $2250, which was placed on the schedule.
We do not see in what manner opponents have been injured, and we are satisfied that the plaintiff has made a fair exhibit of her assets and liabilities, and has been guilty of no fraud in applying for relief.
Rehearing refused.